UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>          Plaintiff,<br>v.<br><br>RACHEL NETTLES; MICHAEL MONTGOMERY; CHARLES JOHANNESSEN; and FELIX DIAZ,<br><br>          Defendants. | Case No. 1:16-cv-00534-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

This case involves Plaintiff Michael T. Hayes's prisoner complaint against the named Defendants, all of whom are correctional officers employed by the Idaho Department of Corrections ("IDOC"). Pending before the Court is Defendants' Motion for Summary Judgment. Dkt. 85. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented.

Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS the Motion.

# II. BACKGROUND

In 2016, Hayes filed a Complaint alleging that Defendants had violated a variety of his constitutional rights. Dkt. 1. Over the course of this case, the Court determined that

Hayes could proceed only on his Eighth Amendment excessive force claim and a single Fourteenth Amendment Due Process claim. *See* Dkts. 11, 70.

Related to his first claim, Hayes alleges that on November 10, 2015, Officers Nettles, Montgomery, and Johannessen severely beat him, causing serious injuries, at an infraction hearing. Dkt. 54, at 33–35. Specifically, Hayes claims that he objected to the hearing and began explaining his side of the alleged infraction. *Id.* at 35. He then threatened to pursue a lawsuit against the officers. At that point, Hayes alleges that the officers slammed him to the concrete floor and beat him while his hands were cuffed behind his back. *Id.* at 33–35. He claims that he posed no threat and that the officers took this course of action in retaliation for his previous alleged infraction and to confiscate his property from his cell. Dkt. 94, at 7–9.

As to his second claim, Hayes alleges that Officer Diaz violated his due process rights during a disciplinary offense report ("DOR") hearing on November 17, 2015. Dkt. 54, at 36–37. This hearing was held to address the altercation that occurred at his November 10, 2015 hearing. Hayes claims that the hearing was held without notice or an opportunity to provide evidence.

On January 27, 2020, Defendants filed the pending Motion for Summary Judgment asking the Court to dismiss both of Hayes's remaining claims. Dkt. 85. Hayes responded (Dkt. 94), and Defendants replied (Dkt. 99). The issue is ripe.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor" to the extent possible. *Id.*

To defeat a motion for summary judgment, the respondent must present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001); *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988) (explaining that the opposing party may not rest on conclusory allegations or mere assertions). Put differently, the evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

## IV. DISCUSSION

With that standard in mind, the Court turns to Hayes's two remaining claims, which as outlined above are an Eighth Amendment excessive force claim against Officers Nettles,

MEMORANDUM DECISION AND ORDER - 3

Montgomery, and Johannessen, and a Fourteenth Amendment Due Process claim against Officer Diaz.[1] Defendants make various arguments in favor of summary judgment as to each claim, including arguments that qualified immunity applies. The Court will address those arguments in turn below.

### A. Eighth Amendment Claim

The Eighth Amendment prohibits prison officials from using excessive force against inmates. Because the Eighth Amendment prohibits only "cruel and unusual" punishment, the use of force amounts to a constitutional violation if it is applied "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (cleaned up). "This standard necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2003). Therefore, a prisoner asserting an excessive force claim must show "malicious and sadistic force, not merely objectively unreasonable force." *Id.*

"The doctrine of qualified immunity protects government officials from liability for civil damages . . . ." *Wood v. Moss*, 572 U.S. 744, 757 (2014). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (cleaned up). The Supreme Court has set forth a two-part analysis

---

[1] The Court previously dismissed two of Hayes's other three claims in his Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 70. The Court also combined Hayes's two Due Process claims against Officer Diaz because they were essentially the same. *Id.* at 10. Thus, the two claims discussed are all that remain in this case.

MEMORANDUM DECISION AND ORDER - 4

for resolving government officials' qualified immunity claims. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002). First, the court must consider whether the facts show that a defendant's conduct violated a constitutional right. *Id.*; *Scott v. Harris*, 550 U.S. 372, 377 (2007). "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018). Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Hope*, 536 U.S. at 736; *see also Clement*, 298 F.3d at 903 (explaining that "the issue of qualified immunity involves a two-step inquiry" and that "a negative answer" on the first issue "ends the analysis, with qualified immunity protecting the defendants from liability" (cleaned up)).

The threshold inquiry in a qualified immunity analysis is, therefore, whether the plaintiff has established a constitutional violation. *Hope*, 536 U.S. at 736. In the case of an Eighth Amendment excessive force claim, "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)); *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 795 (9th Cir. 2018); *Clement*, 298 F.3d at 903 ("[U]nder the Eighth Amendment, we look for malicious and sadistic force, not merely objectively unreasonable force."). Although the extent of the injury suffered by an inmate can be one factor of this inquiry, the force applied is what ultimately counts. *Wilkins*, 559 U.S. at 38.

This inquiry is "contextual and responsive to contemporary standards of decency."

*Hudson*, 503 U.S. at 8 (cleaned up). Because the use of force relates to the prison official's legitimate interest in maintaining security and order, the court must be deferential when reviewing the necessity of using force. *See Whitley*, 475 U.S. at 321–22; *see also Norwood v. Vance*, 591 F.3d 1062, 1066–67 (9th Cir. 2010).

    1. *Qualified Immunity—Violation of a Constitutional Right*

Defendants first argue there is no evidence that they acted with malicious or sadistic intent, and therefore they are entitled to qualified immunity. Dkt. 85, at 4. In response, Hayes points to his injuries as evidence that the officers acted maliciously and sadistically. Specifically, Hayes directs the Court's attention to Exhibits K, D, E, F, and I of his Response—all of which relate to his medical treatment after the hearing scuffle. Dkt. 94, at 11–13. These records substantiate Hayes's claims that he was injured during the incident. Nevertheless, summary judgment is appropriate on this claim due to a lack of triable evidence as to Defendants' state of mind.

To begin, Hayes's own exhibits demonstrate that his injuries were not extensive. For example, the doctor's assessment of Hayes's kidneys shows no sign of harm or irregularity. Dkt. 94-1, at 13. Moreover, given the circumstances described below, Hayes's injuries are not enough to establish the requisite malintent on the Defendants' part because of their reasonable response to Hayes's threats and physical attack. Hayes's conclusory allegations are simply insufficient to survive summary judgment on this issue. *See Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001) (per curiam) (explaining that summary judgment is proper when a plaintiff is unable to put forth non-conclusory factual allegations regarding a defendant's state of mind); *see also Ricci*, 557 U.S. at 586.

MEMORANDUM DECISION AND ORDER - 6

Not only is there a lack of evidence that Defendants acted maliciously, the evidence conclusively shows that the officers did not so act. Indeed, the undisputed evidence demonstrates that the officers' use of force was applied in a good-faith manner commensurate with the level of threat Hayes posed and the need to maintain officer safety.

Other than his conclusory allegations to the contrary that wholly lack evidentiary support, Hayes does not dispute the following events that are supported by significant evidence. Hayes became angry, began yelling, clenched his face in anger, and became increasingly agitated during the infraction hearing. He threatened the officers present and used obscenities. In an attempt to control the situation and restore calm, Officer Nettles issued verbal commands to Hayes to stand facing the wall. In defiance to those orders, Hayes began moving away from the wall and escalated the need for continued or greater directives to regain order. Officer Nettles then placed her hands on Hayes's left arm and shoulder to hold him in place against the wall and continued to issue verbal commands for him to remain there, thereby electing not to use a higher amount of reactive force available to her such as a focused blow or a chemical agent spray. Officer Johannessen had by this time entered the room and reasonably perceived a direct threat of harm to the officers in the area. At this point, Hayes kicked Officer Nettles repeatedly, which ultimately led to a jury finding Hayes guilty of battery. The incident ended with further restraining methods employed by the officers.

Importantly here, the Idaho Supreme Court has affirmed Hayes's battery conviction. *See State v. Hayes*, 462 P.3d 1110, 1124 (Idaho 2020). For that reason, Hayes cannot challenge the factual issue of whether he kicked Officer Nettles during the incident. *Heck*

MEMORANDUM DECISION AND ORDER - 7

*v. Humphrey*, 512 U.S. 477, 487 (1994) ("[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."). Moreover, the Court takes judicial notice of the pertinent trial documents involved in that case which support the above-described events pursuant to Federal Rule of Evidence 201(b). *See* Dkt. 60-6.

"[A]n officer who harms an inmate as part of a good-faith effort to maintain security has acted constitutionally" *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). Such is the case here. Hayes's actions caused Defendants to take the actions they did in this case—actions that do not display malice or sadistic intent. In *Whitley*, an officer's actions did not constitute an Eighth Amendment violation where he used lethal force when one officer was assaulted, another was taken hostage, and the shooting officer was instructed to shoot low. 475 U.S. at 321. So too here, Defendants' actions did not violate the Eighth Amendment because they were taken to ensure safety and discipline in response to Hayes's threatening, defiant, and violent actions. Accordingly, Defendants are entitled to qualified immunity on this basis alone. *See Ioane*, 939 F.3d at 950.

2. *Qualified Immunity—Clearly Established Right*

However, even if Defendants' conduct somehow violated Hayes's Eighth Amendment rights—which they certainly did not—qualified immunity would still apply in this case under the doctrine's second prong. To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what

the official is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up). Although "a case directly on point" is unnecessary "for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (cleaned up). "Clearly established law should not be defined at a high level of generality," but rather "must be particularized to the facts of the case." *Id.* at 552 (cleaned up).

A government official "cannot be expected to predict the future course of constitutional law, but the official will not be shielded from liability" for acts that violate clearly established constitutional rights. *Procunier v. Navarette*, 434 U.S. 555, 562 (1978) (cleaned up). "If the law did not put the officials on notice that their conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Clement*, 298 F.3d at 903 (cleaned up).

Federal law does not prohibit correctional officers from subduing a combative and threatening inmate like Hayes by means of physical force. To the contrary, as explained above, federal law supports such actions as long as they are carried out free from malicious or sadistic intent, which they were here. It would be antithetical to common sense and a strange outcome, to say the least, if a case established an Eighth Amendment right for inmates to be free from physical restraint while they berated, threatened, and battered correctional officers. No such right exists, let alone is one clearly established. *See Elder v. Holloway*, 510 U.S. 510, 512, 516 (1994) ("A court engaging in review of . . . qualified immunity . . . should therefore use its full knowledge of its own and other relevant precedents." (cleaned up)). Accordingly, Defendants are entitled to qualified immunity due

to a lack of clearly established right against their actions in this case as well.

    *3. Conclusion*

In sum, Defendants are entitled to summary judgment under either prong of the qualified immunity doctrine, and therefore Hayes's Eighth Amendment claim must be dismissed.

**B. Fourteenth Amendment Claim**

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. . . . [T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. *Id.* (cleaned up); *see also Sandin v. Conner*, 515 U.S. 472, 478 (1995). In short, "prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin*, 515 U.S. at 485.

    *1. Exhaustion of Administrative Remedies*

First, Defendants contend that Hayes failed to exhaust his administrative remedies, and therefore his claim against Officer Diaz should be dismissed on this procedural ground. Dkt. 85, at 11. Hayes provides Exhibit Y of his Response as proof that he exhausted his

administrative remedies. Dkt. 94, at 49. In that exhibit, which is an IDOC "Disciplinary Appeal Form," Hayes asserts that Officer Diaz violated his due process rights under the Fourteenth Amendment for the same reasons he does in his Amended Complaint. However, that form did not fulfill the procedural steps necessary for Hayes to exhaust his administrative remedies.[2]

The Prison Litigation Reform Act states that prisoners must exhaust available administrative remedies before filing § 1983 actions in federal court. *See* 42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010). The exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 524–32 (2002); *see also Nettles v. Grounds*, 830 F.3d 922, 932 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 645, (2017).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Proper exhaustion means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.*; "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Reyes*

---

[2] Hayes also argues that Officer Diaz violated S.O.P. 318.02.01.001. However, "there is no § 1983 liability for violating prison policy. [Hayes] must prove that [the officials] violated his constitutional right." *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Moreover, Hayes, not Officer Diaz, in fact did not follow that policy by not exhausting his administrative remedies.

MEMORANDUM DECISION AND ORDER - 11

*v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). The exhaustion requirement gives "an agency an opportunity to correct is own mistakes" and it "promotes efficiency." *Woodford*, 548 U.S. at 89 (cleaned up).

Here, Hayes failed to check this essential procedural box. Under IDOC policy, all aspects of the offender disciplinary system are subject to administrative review either in the form of a grievance or an appeal. *See* Dkt. 85-2, at 5–6 (SOP 316.02.01.001; SOP 318.02.01.001).[3] The policy defines "non-grievable" disciplinary issues as follows:

> Offenders cannot submit a Grievance for issues specific to the offender disciplinary system such as behavioral interventions and/or sanctions, infraction reports, disciplinary offense reports (DORs), actions, and hearing officer [sic] review authority, and appellate authority decisions.

*Id.* (IDOC 316.02.01.001, *5). In other words, non-grievable issues are those underlying the disciplinary decision itself such as a punishment or behavioral intervention. The issues underlying Hayes's Due Process claim fall outside this category because notice, an opportunity to present evidence, and his resulting classification based on DOR points are not the basis of the punishment he received.

Other than Exhibit Y, Hayes has not presented any evidence that he filed either a grievance or appeal. In addition, there are evidentiary issues with Exhibit Y. To begin, there is no evidence to demonstrate that Exhibit Y was ever submitted to IDOC. There is no receiving information from the facility, and it is not contained in IDOC's online tracking system for appeals to DORs. Moreover, it was not provided at Hayes's deposition when he was asked about whether he had filed a grievance or appeal and given a break to attempt

---

[3] These rules are part of IDOC's Disciplinary Procedures for Inmates. Dkt. 85-2, at 5.

to locate documentary evidence. Furthermore, even if Hayes were to file this document with the proper prison personnel now, it would be too late because prisoners must exhaust their administrative remedies prior to filing suit, not during the pendency of the suit. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam). Although Hayes had ample time to disclose this document through discovery and at his deposition, he failed to do so. Thus, Hayes did not take the proper procedural steps of airing his qualms with IDOC.

In any event, Exhibit Y would not be capable of fulfilling the administrative process because a grievance was required to address Hayes's issues. *See Campbell v. Yordy*, No. 1:15-cv-00529, 2016 WL 7256812, at *7 (D. Idaho Dec. 15, 2016) (explaining that the policies made clear that the plaintiff was required to file a grievance to exhaust his administrative remedies).

In short, IDOC's requirements defined the boundaries of proper exhaustion, and Hayes did not properly exhaust his administrative remedies, if at all. *See Reyes*, 810 F.3d at 657. Therefore, his claim must be dismissed on this procedural ground alone.

2. *Process Due*

Next, Defendants contend that Hayes received all the process that was due and that the deprivations he now claims were voluntarily selected by him. Dkt. 85, at 16. As for the process actually due, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 566. When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the

disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *Id.* at 563–70 (1974); *Serrano v. Francis*, 345 F.3d 1071, 1077–78 (9th Cir. 2003).

     Here, all those procedural safeguards were available to Hayes, but he chose not to avail himself of them. Indeed, IDOC records show that Hayes received notice of the hearing and was offered, but declined, all the protections he now claims he was denied. On November 10, 2015, a DOR was created describing the use of force incident on Hayes that occurred that very same day, and it explained the nature of the offense that was the basis of the November 17, 2015 hearing over which Officer Diaz presided. Dkt. 85-2, at 6–7. That report was signed and dated by Hayes on November 11, 2015, which indisputably establishes that Hayes received not just 24 hours' notice, but six days advance notice of the hearing. *Id.* The DOR includes sections with boxes the inmate can check if they would like to request a staff hearing assistant or witness statement forms, and Hayes's signature appears beneath these two sections. Importantly, however, Hayes did not check either box, thereby indicating his choice to forgo use of those resources. *Id.* The form includes handwritten notes in red from Officer Diaz personally that clearly state that at 8:15 a.m. Hayes refused to attend the disciplinary hearing, meaning that Hayes *voluntarily* elected not to attend.

     In other words, Hayes was not forced to stay in his cell while the hearing occurred.

Hayes chose to remain in his cell. He was not denied a request for witnesses or legal assistance. He chose not to avail himself of the resources available to him to gather that evidence. These decisions supersede any liability of Officer Diaz, and extinguish Hayes's due process claim.

Therefore, there is no genuine dispute of fact regarding whether Hayes received advance written notice of the hearing, an opportunity to be heard and present evidence, and ultimately an opportunity for a fair hearing. As such is the case, Hayes cannot claim now that his procedural rights were violated because it was his own choices that prevented him from participating in the process. Therefore, Officer Diaz is entitled to summary judgment because Hayes received the process that was due.

### 3. Qualified Immunity

Lastly, Officer Diaz contends that he is entitled to qualified immunity because no case clearly establishes any further procedural right under the Fourteenth Amendment given the circumstances. Dkt. 85, at 18. Hayes does not identify a single case that clearly establishes that an officer acting under similar circumstances was held to have violated the Fourteenth Amendment. Nor is the Court aware of one. Indeed, the evidence shows that Hayes chose the consequences of which he now complains. Thus, Officer Diaz is entitled to qualified immunity, and therefore immunity provides a separate basis for dismissal of Hayes's claim against him. *See White*, 137 S. Ct. at 551–52.

### 4. Conclusion

Summary judgment is appropriate as to Hayes's remaining Fourteenth Amendment Due Process claim because he did not exhaust his administrative remedies. Alternatively,

the evidence proves that Officer Diaz did not violate Hayes's due process rights because Hayes chose to forgo the procedural protections that were offered to him and to undergo the procedural deprivations of which he now claims. Finally, Officer Diaz is entitled to qualified immunity.[4]

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment and dismisses both of Hayes's remaining claims.

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendants' Motion for Summary Judgment (Dkt. 85) is **GRANTED**.

2. Hayes's two remaining claims are **DISMISSED** with prejudice.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: October 27, 2020

David C. Nye
Chief U.S. District Court Judge

---

[4] Defendants also contend that "[t]he sanction imposed by Officer Diaz did not result in a custody classification that implicates a protected liberty interest." Dkt. 85, at 14. It is worth noting that Hayes has also failed to provide evidence that Officer Diaz's decision is the cause of his continual close custody, especially in light of Hayes's conduct as well as his prior and subsequent close custody statuses unrelated to Officer Diaz's DOR. *See Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The Court need not decide this issue, however, because the other bases provide ample support for summary judgment on this claim.